United States Courts
Southern District of Texas
FILED

FEB -2 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | Case No. **H18-0146M** |
| ) | |
| THE EXTRADITION OF ) | |
| ) | **FILED UNDER SEAL** |
| JOSEPH VALENTINO ) | |

**COMPLAINT**
(18 U.S.C. § 3184)

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

I, the undersigned Assistant United States Attorney, being duly sworn, state upon information and belief that the following is true and correct:

1. In this matter I represent the United States in fulfilling its treaty obligation the Government of the Kingdom of the Netherlands.

2. There is an extradition treaty in force between the United States and the Netherlands, the Extradition Treaty Between the United States of America and the Kingdom of the Netherlands, U.S.-Neth., June 24, 1980, 35 U.S.T. 1334, as amended by the Agreement Comprising the Instrument as Contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed at Washington on 25 June 2003, as to the application of the Extradition Treaty Between the United States of America and the Kingdom of the Netherlands signed at the Hague on 24 June 1980, U.S.-Neth., Sept. 29, 2004, S. Treaty Doc. No. 109-14 (2006) (collectively referenced hereafter as the "Treaty").

3. Pursuant to the Treaty, the Government of the Netherlands has submitted a formal request through diplomatic channels for the extradition of Joseph Valentino ("Valentino").

4. Except as otherwise indicated, the summary of evidence herein below is predicated upon the declaration from the U.S. Department of State, with its attachments, including a copy of

1

the diplomatic note from the Netherlands, a copy of the relevant Treaty, and the certified documents submitted in support of the request. Authenticated originals thereof will be submitted to the Court in the course of extradition proceedings with copies to the defendant upon his arrest.

5. According to the information provided by the Government of the Netherlands, Valentino was convicted of (a) participating in a criminal organization whose purposes involved the commission of criminal activity, along with several co-conspirators and using several companies (including Oxbridge Investments Limited ("Oxbridge") and American Energy B.V.) as investment vehicles in furtherance of the criminal activity, in violation of Article 140 of the Netherlands Penal Code, and (b) intentionally filing false tax returns, in violation of Article 68 of the Netherlands State Taxes Act. Both would also be offenses if committed in the United States. See, e.g., 18 United States Code Section 371 (Conspiracy to commit offense or to defraud the United States) and 26 United States Code Section 7201 (Attempt to evade or defeat tax) and 26 United States Code Section 7206(2) (Fraud and false statements – Aid or assistance).

6. These offenses were committed within the jurisdiction of the Netherlands.

    a. On November 19, 2002, the District Public Prosecutor's Office in Amsterdam, the Netherlands, issued a "Summons To Defendant" to Valentino to appear as a defendant before the District Court of Amsterdam on charges that included offenses alleged under Article 140 of the Netherlands Penal Code and Article 68 of the Netherlands State Taxes Act. On April 26, 2003, Valentino executed a sworn affidavit stating that he would invoke privilege and refuse to answer any questions if subpoenaed by a governmental authority regarding "the Oxbridge Group, Oxbridge Investments, and any related entities."

  b. On February 24, 2004, the District Court of Amsterdam convicted Valentino *in abstentia* and sentenced him to a term of imprisonment of forty-two months.

  c. On March 3, 2004, through defense counsel, Valentino appealed to the Amsterdam Court of Appeals. Valentino's defense counsel argued his case in front of the Amsterdam Court of Appeals on June 26, 2006, at which time he submitted Valentino's resume showing work experience at the Houston, Texas law firm Chamberlain, Hrdlicka, White, Williams, and Martin ("Chamberlin"). Dutch authorities were in possession of a May 1995 letter signed by Valentino, with a copy to Fay Lee Russell ("Russell"), sent on Chamberlin letterhead, regarding tax planning for a Dutch company that Valentino stated was a subsidiary of Oxbridge.

  d. On July 13, 2007, the Amsterdam Court of Appeals affirmed several of the charges, including pursuant to Article 140 of the Netherlands Penal Code and Article 68 of the Netherlands State Taxes Act, and resentenced Valentino to a term of imprisonment for thirty-four (34) months (calculated as 1020 days by Dutch authorities). The Amsterdam Court of Appeals judgment became final on July 7, 2009.

  e. Valentino has not served any of the 1020 days of confinement to which he was sentenced. If he were paroled, under laws in the Netherlands pertaining to early prisoner release, his remaining term of imprisonment may be as few as 680 days.

7. Valentino's convictions were based on the following facts:[1]

---

[1] These facts are derived from the findings portions of the Judgment of the Amsterdam Court of Appeals. An English translation of the majority of this Judgment is contained within the extradition request from the Netherlands.

a. In September 1992, Russell became an attorney-in-fact for Oxbridge, which was an offshore company registered in the Bahamas. Between 1992 and 1996, Oxbridge purchased all of the shares of eight Dutch companies ("Dutch companies") and renamed them. These Dutch companies (after their renaming) included American Energy B.V., American Energy Resources B.V., and American Energy Mining B.V. Russell was the managing or sole director of all eight Dutch companies.

b. Shortly after the purchase of the Dutch companies by Oxbridge, the liquid funds of these companies were withdrawn by Oxbridge management. Additionally, the Dutch companies purchased certain "intangible assets" (*e.g.*, oil leases, coal properties, zeolite mines) from Oxbridge, or another Oxbridge-affiliated company, for a significant purchase price and based on a relatively short-term contract of five-to-ten years. The Dutch companies usually continued to owe the purchase price of the assets to the seller via promissory notes.

c. Beginning on or about 1993, Valentino began acting as tax advisor for Oxbridge and gave extensive input about how the Dutch corporate income tax returns should be filed for the Dutch companies. These included:

   i. A corporate income tax return for the company American Energy B.V. for the calendar years 1993 and 1994, which was signed by Russell on September 1, 1995, and received by Dutch tax authorities on September 15, 1995.

   ii. A corporate income tax return for the company American Energy Resources B.V. for the calendar year 1994, which was signed by Russell on September 1, 1995, and received by Dutch tax authorities on September 15, 1995.

        iii.    A corporate income tax return for the company American Energy B.V. for the calendar year 1995, which was signed by Russell on July 1, 1997, and received by Dutch tax authorities on August 1, 1997.

        iv.    A corporate income tax return for the company American Energy Mining B.V. for the period July 1, 1994, to and including December 31, 1995, which was signed on July 1, 1997, by Russell and received by Dutch tax authorities on August 1, 1997.

    d.    These tax returns, like other corporate tax returns filed for the Dutch companies for the period 1992-95, asserted the value of the intangible assets purchased by the relevant Dutch company. The tax returns also declared significant depreciation write-offs associated with the intangible assets.

    e.    According to the findings of the Amsterdam Court of Appeals:

        i.    Oxbridge management listed on the Dutch tax returns the values of the intangible assets that had been purchased by the Dutch companies at an amount that was "fictitious," in that the values were intentionally inflated to be much higher than the actual market price.

        ii.    Oxbridge management listed on these Dutch tax returns depreciation write-offs, associated with the values of the intangible assets, which were also fictitious, in that they were intentionally inflated to be much higher than the actual depreciation value.

        iii.    Oxbridge management had no intent to exploit the intangible assets or any financial ability to do so.

iv. Oxbridge management had purchased these intangible assets for the express purpose of eliminating the profits that the Dutch companies had generated in the Netherlands before their takeover by Oxbridge by listing fictitious depreciation values on the Dutch tax returns.

v. The goal of Oxbridge management, using the Oxbridge shell company, was to transfer the Dutch companies' funds into foreign bank accounts, and to disperse those funds among the individual members of Oxbridge's management, while avoiding Dutch taxes by filing fictitious asset and depreciation values on Dutch tax returns.

vi. Valentino participated with other members of Oxbridge management in this criminal scheme, which included the intentional filing of false declarations on Dutch corporate tax returns. These tax returns specifically included the corporate tax return for American Energy B.V. for the calendar years 1993, 1994, and 1995; for American Energy Resources B.V. for the calendar year 1994; and for American Energy Mining B.V. for the period July 1, 1994, to and including December 31, 1995.

f. The Amsterdam Court of Appeals further found:

i. That between January 1, 1992, and April 11, 2000, Valentino participated with several co-conspirators in a criminal organization that used the companies Oxbridge Investments Limited and American Energy B.V. for the purpose of committing criminal activity, including committing tax offenses by filing false corporate income tax returns.

    ii. That on September 15, 1995, Valentino, acting with co-conspirators, intentionally filed a false tax return on behalf of the company American Energy B.V. for the calendar years 1993 and 1994, and intentionally filed a false tax return on behalf of the company American Energy Resources N.V. for the calendar year 1994.[2]

    iii. That on August 1, 1997, Valentino, acting with co-conspirators, intentionally filed a false tax return on behalf of the companies American Energy B.V. for the calendar year 1995, and he intentionally filed a false tax return on behalf of the company American Energy Mining B.V. for the period July 1, 1994, to and including December 31, 1995.[3]

8. Tom Heinemann, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Netherlands, in accordance with Article 9(6) of the Treaty, so as to enable them to be received into evidence.[4]

---

[2] September 15, 1997, was the date that Dutch tax authorities received the false tax returns.

[3] August 1, 1997, was the date that Dutch tax authorities received the false tax returns.
[4] See Exhibit 1

9. Valentino is believed to be within the jurisdiction of this Court: Documentation incorporated into the extradition request[5]: (a) identifies the person convicted and to be extradited as "Joseph Valentino" born on July 5, 1946, (b) reflects that the said Joseph Valentino was explicitly represented and defended by an authorized attorney in the proceedings that resulted in his conviction[6], (c) reflects that the said Joseph Valentino presented himself as associated with the Houston, Texas law firm Chamberlain Hrdlicka White Williams & Martin (the "Chamberlain firm"), (d) reflects that a letter integral to the offenses of conviction and the legal proceedings relating thereto bears the name of the Chamberlain firm and the said Joseph Valentino's signature,[7] (e) reflects that the said Joseph Valentino signed documentation confirming receipt of summons to appear[8]; and (f) reflects that the said Joseph Valentino signed an affidavit incident to the proceedings invoking his Fifth Amendment right against self-incrimination and/or attorney/client privilege.[9] Internet research via the Texas State Bar website on January 12, 2018 revealed that Joseph R. Valentino of 7011 Sandy Knolls Drive, Spring Texas 7739-4796 was licensed to practice law on February 14, 1977 and issued Bar Card Number 20432300 and that this license was active on that date.[10] An internet search of "joseph ronald valentino chamberlain hrdlicka" on January 12, 2018 revealed that the Supreme Court of Texas suspended the license #20432300 of "Joseph Ronald Valentino" of Chamberlain Hrdlicka et al, 1200 Smith St., Suite 1400, Houston Texas 77002-4310 on February 1, 2002.[11] Current Texas Driver's License records reflect that license

---

[5] See Exhibit 2
[6] See Exhibit 3.
[7] See Exhibit 4.
[8] See Exhibit 5, which includes a copy of the return of a certified mail receipt addressed to "*Joseph Valentino 2408 Dale Lane, Dale TX 78616*" for mail delivered on May 18, *2007.*
[9] See Exhibit 6.
[10] See Exhibit 7.
[11] See Exhibit 8.

#08014624 was issued to Joseph Ronald Valentino born July 5, 1946 with an address of 7011 Sandy Knolls Drive, Spring TX 77379.[12] Texas Driver's License records further reflect that a license with that same number 08014624 was issued on or about April 28, 2004 to expire on July 5, 2009 to Joseph Ronald Valentino born July 5, 1946 with an address of 2408 Dale Lane, Dale TX 78616.[13] Therefore, the Joseph Valentino for whom extradition has been duly requested by the Netherlands is believed to reside and can be found at or near 7011 Sandy Knolls Drive, Spring Texas 77379, which is within the jurisdiction of this Court.

10.   Based upon his failure to appear in the herein-above described judicial proceedings, the United States reasonably believes that Valentino may flee upon learning of the existence of a warrant for his arrest.

WHEREFORE, the United States requests that a warrant for the arrest of the Joseph Ronald Valentino be issued in accordance with the extradition treaty between the United States and the Netherlands and 18 U.S.C. § 3184, so that he may be arrested and brought before this Court and evidence of criminality and supporting extradition may be heard and considered and that, after a copy of the signed complaint with supporting documents, the arrest warrant, and the motion and order to seal have been provided to the United States Department of Justice, the complaint

---

[12] See Exhibit 9.
[13] See Exhibit 10.  See also Footnote 8/Exhibit 5 above.

and supporting documents, the arrest warrant, the motion and order to seal and the Court's file be sealed without entries to the public docket until further order of this Court.

Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: _____
Jimmy Sledge Jr.
Assistant United States Attorney
Southern District of Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
TEL: 713/567-9735
Email: jimmy.sledge@usdoj.gov

Sworn to and subscribed before me at Houston, Texas on this 2d day of February, 2018, and I find probable cause.

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

10