IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § | CASE NO. 4:18-mj-00146 |
| JOSEPH VALENTINO | § | |

## ORDER FOR RELEASE ON BOND PENDING EXTRADITION HEARING

Before the court is Joseph Valentino's request to be released on bond pending his extradition hearing. The Government contests his release and contends that he is a flight risk.

## Background

The Dutch Government, acting through the Assistant United States' Attorney for the Southern District of Texas, filed a complaint on February 2, 2018, to begin extradition proceedings against Valentino. (Dkt. No. 1). The Netherlands seeks to extradite Valentino to serve a thirty-four month sentence for his conviction, *in absentia*, on two charges in connection with alleged tax evasion by two Dutch companies. Specifically, Valentino was convicted of participating in a criminal organization whose purposes involved the commission of criminal activity, along with several co-conspirators, and using companies (including Oxbridge Investments Limited and American Energy B.V.) as investment vehicles in furtherance of the criminal activity, in violation of Article 140 of the Netherlands' Penal Code. The complaint describes the criminal activity as the filing of fictitious asset and depreciation values on Dutch tax returns, which allowed the organization to improperly obtain tax refunds. The complaint alleges that Valentino and

others intentionally made false declarations on the Dutch corporate tax returns, justifying his conviction on this charge. Valentino was also convicted of intentionally filing false tax returns, in violation of Article 68 of the Netherlands' State Taxes Act, for his involvement in the alleged scheme that included providing false information used by accountants to prepare the Dutch tax returns.

In 2002, the District Public Prosecutor's Office in Amsterdam issued a summons to Valentino to appear as a defendant. It is disputed whether Valentino received this summons. The Dutch Government contends that a copy of the summons was given to Valentino's wife on December 2, 2002, and that Valentino's attorney at the time confirmed receipt of the summons. Valentino testified that he did not receive that summons. His attorney later offered testimony to the Dutch Court of Appeals denying that he ever received a copy of summons as alleged. Valentino testified at a detention hearing on April 20, 2018 that he learned there was a criminal investigation in this matter, but did not know he was a target. He refused to be formally interviewed in the matter and he executed an affidavit on April 26, 2003, stating that he would assert the privilege against self-incrimination and/or the attorney client privilege if he was subpoenaed. The Dutch prosecution proceeded without him. Another summons was issued in November, 2003, to appear for trial and was left with a secretary at his law office. He did not appear for trial, and on February 24, 2004, he was convicted *in absentia* and sentenced to forty-two months in prison.

His conviction was appealed on March 3, 2004, through an attorney.[1] On May 18, 2007, Valentino was served with a summons to appear for a hearing of his appeal on June 25, 2007. He did not appear for the hearing and his convictions were affirmed, but with a reduction of his sentence to thirty-four months.[2] The Court of Appeals in the Netherlands found that Valentino and others used Oxbridge to purchase "cash shell companies"[3] in the Netherlands. Oxbridge then removed the cash from the Dutch cash shell company, while also selling or transferring an intangible asset (i.e., an oil lease, coal mine or gold mine lease, patent interest, etc.) to the company. The value of the intangible asset was then depreciated over a short period of time (ten years or less) and that depreciation used to reduce the tax liability. The Dutch Court of Appeals found that, although the form of the transaction was permissible, the transactions at issue in these instances were not. That is because, according to the court, Valentino and others inflated the value of the assets in order to claim a greater than allowed depreciation loss, and because there was no legitimate intent to utilize the assets. The Court of Appeals judgment became final on July 7, 2009. Several years later, on July 6, 2016, the Embassy of the Netherlands submitted a formal request for the extradition of Valentino.[4]

---

[1] There is no clear indication whether the attorney was hired by Valentino or appointed by the Dutch court to represent him in his absence. A statement made by the Dutch Government in support of the extradition requests suggests Valentino hired an attorney to represent him at the trial and on appeal. Valentino admitted to retaining a Dutch criminal attorney, but it is not clear the timing of that hire.

[2] The Memorandum of Oral Pleading from the appellate argument indicates that the government withdrew its claims of falsity with respect to several of the claims at issue in the trial.

[3] A cash shell company is an entity that is somewhat unique to the Netherlands.

[4] The diplomatic note refers to an earlier extradition request from May 7, 2015, and said it was "resubmit[ting] the request." There is an uncorroborated statement that a request for a provisional arrest was sent in December, 2012 and an extradition request was submitted in September 2013. That request was apparently deficient and was resubmitted in May 2015.

The United States Government filed the complaint on February 2, 2018. An arrest warrant was issued the same day. Valentino was taken into custody and brought before a magistrate judge who explained the charges, the nature of the proceedings, and his rights, on April 18, 2018. He was ordered to be detained in the custody of the United States Marshal pending the extradition hearing on May 22, 2018. A hearing was held on April 20, 2018 at which Valentino testified in support of his release on bond.

**Legal Standards**

An international extradition proceeding is not a criminal case and therefore the Bail Reform Act, 18 U.S.C. § 3141 et. seq., does not explicitly apply. *United States v. Ramnath*, 533 F. Supp. 2d 662, 666 (E.D. Tex. 2008). The sui generis nature of extradition proceedings, along with a lack of statutory guidance, has made determining bond in such cases a difficult task for federal courts. *See In re Extradition of Garcia*, 761 F.Supp.2d 468, 470 (S.D. Tex. 2010) (noting the difficulty of bond decisions in extradition cases); 18 U.S.C. § 3142 (providing bond guidance in domestic criminal cases) and *Ramnath*, 533 F. Supp. 2d at 666 (applying, as a helpful reference framework, the factors set out in the Bail Reform Act to determine if a person is a danger or a flight risk). A federal common law has, by necessity, developed the guiding principles and legal standards governing bail determinations in extradition cases. *See Garcia*, 761 F.Supp.2d at 470 ("Federal district courts have almost exclusively, and by necessity, developed a federal common law to fill in the gaps left by current legislation for bail determinations in foreign extradition cases.")

There is a presumption against bail in extradition cases. *Wright v. Henkel*, 190 U.S. 40, 63 (1903); *In re Extradition of Russell*, 805 F.2d 1215, 1216 (5th Cir. 1986). The rationale is that extradition cases involve an overriding national interest in complying with treaty obligations which would be stymied if the defendant absconded while released on bond pending extradition. *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990); *In re Extradition of Garcia*, 761 F. Supp. 2d at 475 ("[O]ur nation has important interests in (1) fulfilling its legal and binding obligations under its treaties with foreign governments, (2) avoiding any international embarrassment if our country were unable to fulfill those obligations, and (3) preventing any circumstances that would lead to potential reciprocal noncompliance by foreign governments."). Because of that, the burden rests with the extraditee to show that he is neither a flight risk nor a danger to the community, and that special circumstances warrant pre-hearing release. *Russell*, 805 F.2d at 1217; *Ramnath*, 533 F.Supp.2d at 665.

Special circumstances can arise under a variety of conditions, or by virtue of a combination of conditions that taken together create a compelling case for release on bail. Examples of such circumstances include "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). Some other circumstances that have been considered are the need to consult with counsel, the age of the respondent, the availability of bail to respondent in the requesting state or state of arrest, the likelihood of respondent being found non-extraditable, and the deprivation of religious practices while incarcerated.

5

*Ramnath*, 533 F.Supp.2d at 666. The determination of special circumstances is left to the sound discretion of the trial judge. *Id.*; *In re Gonzalez*, 52 F.Supp.2d 725, 736 (W.D. La. 1999).

**<u>Flight Risk and Danger to the Community</u>**

Although the Bail Reform Act does not apply to this detention decision, it is appropriate to look to its factors to determine whether Valentino is a flight risk. *Ramnath*, 533 F.Supp.2d at 666. That statute requires a courts considering an application for bail to take into account the available information concerning (1) the nature and circumstances of the offense charged (including whether the alleged offense is a crime of violence); (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

It is Valentino's burden to show he is neither a danger to the community nor a flight risk. The record and the testimony at the hearing show that Valentino has satisfied his burden. He has been convicted, in essence, of tax evasion and conspiracy to commit tax evasion. These are not crimes of violence, and there is no evidence that he has ever been in trouble with law enforcement in the United States, or that he has any history of violence. The United States Government has not produced any evidence suggesting he is dangerous.

The United States Government has also supplied very little evidence supporting the inference that he is a flight risk or a danger. The Government points out that Valentino stays at five different homes owned by him, his ex-wife, or his step-son,

creating an "unstable" living situation. Valentino, however, has agreed to stay at a single location if granted bond. The Government points also to his decision to not attend the hearing on appeal in 1997 as evidence he is a flight risk. The court does not agree. His decision to remain in the United States and exercise his rights under the Constitution rather than travel to the Netherlands and subject himself to that country's jurisdiction, in order to appeal a conviction from a trial *in absentia,* is not evidence he will flee now. This is bolstered by his testimony that he was told he could not be extradited for punishment, which itself is supported by the October 4, 2005 minutes of the Amsterdam Court of Appeals in which the advocate general in the Netherlands expressed concerns about the enforceability of extradition for enforcement of an *in absentia* conviction. Valentino has lived openly in the community for forty-six years, maintains his own law practice, and has ties to this community. He is seventy-one years old, does not have a valid passport, and has not traveled abroad in at least fifteen years. The court finds that he does not pose a danger to the community and he is not a significant flight risk. Any risk of flight can be mitigated by the posting of bond and other conditions of release.

**Special Circumstances**

Valentino argues that he should be released under the special circumstances exception because there is a substantial likelihood he will succeed in challenging extradition. He alleges several reasons he will prevail. First, although he has been convicted, because he was tried *in absentia*, he insists the conviction should be treated as only a "charge." He argues there is no probable cause to support the charges. He also argues that under Article 6 of the extradition treaty, extradition is barred by the passage of

time, for two reasons. He argues that if the Netherlands had sought to extradite him in 2002 when it filed the charges against him, it would have been denied under Article 6 because the statute of limitations on the charges had already lapsed. He reasons, from that, that it must also be time barred in this instance when extradition for punishment follows an *in absentia* conviction that was otherwise time barred. Alternatively, Valentino argues that the delay between the conviction and the Dutch Government's attempt to enforce the penalty violates his right to a speedy trial. He claims that the seven year delay between the conviction and the extradition request compels the conclusion that there is not a diplomatic necessity for detention. Finally, he contends that this is a highly unusual circumstance: he has been convicted, *in absentia,* for rendering tax advice that would be legal in the United States.

International extradition proceedings are governed both by statute (18 U.S.C. §§ 3181, 3184, 3186, 3188–3191) and by treaty. *See* 18 U.S.C. § 3184. In applying an extradition treaty, the court is to construe it liberally in favor of the requesting nation. *Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933). Valentino's extradition is sought pursuant to a treaty[5] with the Netherlands, a copy of which is provided in Government's Exhibit 1. Because the Treaty is central to the proceedings, at the extradition hearing, the court will have to determine whether the Treaty is a valid extradition treaty in force between the United States and the Netherlands, then must determine whether it is applicable, and finally consider whether the requirements of the treaty have been

---

[5] The full title of the treaty is "Agreement Comprising the Instrument As Contemplated By Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union Signed at Washington on 25 June 2003, as to the Application of the Extradition Treaty Between the United States of America and the Kingdom of the Netherlands Signed at the Hague on 24 June 1980."

8

satisfied. *See* 18 U.S.C. § 3184; *Bozilov v. Seifert*, 983 F.2d 140, 143 (S.D.N.Y. 1999) (considering whether extradition request was made timely under the terms of the treaty).

In addition to determining the validity and applicability of the Treaty, the court must determine whether the charged offenses may provide a basis for Valentino's extradition. This requires that the court determine whether the charged offenses are listed in the Treaty as extraditable offenses. *See, e.g., Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981). It also requires that the court determine whether the principle of dual criminality applies, and if so, whether it is satisfied. *See Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir. 1981).

The court must finally determine whether the evidence supports a probable cause finding as to each charged offense. *Matter of Extradition of Lahoria*, 932 F. Supp. 802, 805 (N.D. Tex. 1996). According to the applicable statute, the court's responsibility is to determine whether, under the Treaty, the evidence is sufficient to sustain the charges that Valentino committed the offenses alleged in the complaint. 18 U.S.C. § 3184. Article 9 of the treaty requires the requesting state to provide, among other things:

1) A statement of the facts of the case, including, if possible, the time and location of the crime;

2) The provision of the law describing the essential elements and the designation of the offense for which extradition is requested;

3) The provision of the law describing the punishment for the offense;

4) The provision of the law providing for jurisdiction when the offense was committed outside of the territory of the Requesting State;

5) (for extradition of an individual for trial) Such evidence, as according to the law of the Requested State, would justify that person's arrest and committal for trial if the offense had been committed there . . .

9

> 6) (for extradition of a convicted person) The original or certified copy of the judgment of conviction pronounced by a court of the Requesting State.

As such, the treaty requires evidence that would support a finding of probable cause in a court of the United States if the crime had been committed here, or, a copy of the judgment of conviction.

In this case, the parties disagree on the significance of the conviction by the Dutch court. The United States Government argues it is *de facto* proof of probable cause to support the charges. Valentino contends that when, as here, the conviction is obtained *in absentia*, it should be considered nothing more than a "mere charge" so that probable cause must still be established independently of the conviction. The courts in this Circuit do not appear to have directly addressed this issue. *See Matter of Extradition of Porumb,* No. 6: 18-MJ-00010, 2018 WL 814568, at *4 (W.D. La. Feb. 9, 2018) ("The Government counters that no probable cause determination is required because he was already convicted albeit *in absentia*. *Assuming without deciding* the Government's position as to the second requirement is correct . . . .") (emphasis added). Courts in other circuits have reached conflicting conclusions. *Compare United States v. Bogue*, No. 98-CRIM.A.-572-M, 1998 WL 966070, at *2 (E.D. Pa. Oct. 13, 1998) ("[A] conviction, although obtained *in absentia*, provides sufficient evidence of criminality to satisfy the probable cause requirements of 18 U.S.C. § 3184.") *with In Matter of Extradition of Ernst*, No. 97 CRIM.MISC.1 PG.22, 1998 WL 395267, at *7 (S.D.N.Y. July 14, 1998) ("[W]here, as in this case, the conviction is the result of a trial *in absentia*, the conviction is regarded merely as a charge, requiring independent proof of probable cause.").

Convictions *in absentia* can generally be organized into three categories: 1) cases in which the accused was present for some or all of the proceeding leading to the conviction, *U. S. ex rel. Bloomfield v. Gengler*, 507 F.2d 925 (2d Cir. 1974) (present for trial at which he was acquitted, not present for appeal that overturned acquittal); *Lindstrom v. Gilkey*, No. 98 C 5191, 1999 WL 342320 (N.D. Ill. May 14, 1999) (present for majority of trial before fleeing); 2) cases in which the accused was not present but was fully represented by counsel, *Gallina v. Fraser*, 177 F. Supp. 856, 859 (D. Conn. 1959), *aff'd*, 278 F.2d 77 (2d Cir. 1960); and 3) cases in which the accused was entirely unrepresented. *In re Ribaudo*, No. 00 CRIM.MISC.1PG.KN, 2004 WL 213021 (S.D.N.Y. Feb. 3, 2004). Although not universal, the overriding principal in cases involving convictions *in absentia* appears to be this: when there is credible evidence supporting the conviction, either because the accused defended himself at trial, had evidence presented on his behalf at trial, or the requesting state has provided evidence supporting the conviction in its request for extradition, a conviction *in absentia* can be evidence of probable cause. When those indicators are absent, it is reasonable for a court to consider the sufficiency of the evidence when a conviction is obtained *in absentia*.

Because this is only a decision on whether to release Valentino pending the extradition hearing, the court is placed in the difficult task of assessing Valentino's success on the merits at the May 22 hearing while not prejudging the claims or the evidence until both sides have had an opportunity to be fully heard. Further, the court may not have before it all of the evidence that will be presented in the extradition hearing.

Valentino insists he will succeed on his contention that the statute of limitations applicable to the charges filed against him had run. He argues that the applicable statute of limitations for the crime of conspiracy is five years (applying the limitations from the Requested State). He notes that the statute of limitations for the false statements on the tax returns is six years, but argues that he did not sign the returns and it is therefore not applicable to him. The Government has not alleged any other limitations period, so it is presumed Valentino's assertion is correct.[6] Applying the statute of limitations from the United States is consistent with Article 6 of the extradition treaty which states that "[e]xtradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requested State."

At this time, it is unknown when the criminal proceedings were initiated. Valentino argues that the wrongful act he is alleged to have done is the preparation of a May 18, 1995 letter written on the letterhead of his law firm. In it, Valentino described a method of offsetting taxable income through the use of depreciable assets.[7] Generally speaking, it is this arrangement that is at the center of these charges against all the defendants.[8]

---

[6] It appears that the Dutch statute of limitations for the conspiracy claim is 12 years. Netherlands' Penal Code Section 70
 (found at http://www.ejtn.eu/PageFiles/6533/2014%20seminars/Omsenie/WetboekvanStrafrecht_ENG_PV.pdf).

[7] For purposes of this opinion, the court is summarizing the main points of his advice as pertinent to the charges against him.

[8] The Dutch Court of Appeals conceded the arrangement itself was proper, however, the manner in which it was used in this case was improper because there was no intent to actually utilize the depreciated assets to generate income.

Valentino was allegedly first summoned in 2002, more than six years after Valentino prepared the letter. Valentino, accordingly, argues that he could not have been extradited at that time even if the Dutch had attempted to do so because under Article 6 of the treaty, the statute of limitations had run on his crimes.[9] In light of this, Valentino has a credible argument that he will prevail in the deportation hearing. It must be noted that the Court of Appeals of the Netherlands refers to other correspondence that may have been authored, at least in part, by Valentino. However, it is not clear from the decision when those materials were created. Accordingly, at this time, that evidence neither confirms nor refutes Valentino's defense. At the detention hearing, Valentino may be able to prove that one or more of his convictions were barred by limitations, and thus probable cause does not exist to support the charges or his convictions.

Additionally, the direct evidence provided to the court at this time linking Valentino to the alleged crimes is the 1995 letter that was written, mailed, and received entirely in the United States. Because Valentino was not in the Netherlands at the time of this conduct, the Dutch Government must provide "the provision of the law providing for

---

[9] There is evidence that extradition was not requested because the crimes for which he had been charged did not allow for pre-trial detention.

jurisdiction" pursuant to Article 9 of the treaty. It has not done so.[10] Unless such evidence is submitted, Valentino may well prevail on this issue at the detention hearing.

Considering the evidence as a whole, Valentino has a probability of success on one or more of his claims at the detention hearing and that probability supports his argument that special circumstances exist to justify his release on bond. The evidence before the court indicates that the crimes alleged are non-violent and are not eligible for pre-trial confinement under the laws of the Netherlands. The Dutch Prosecutor requested the issuance of an arrest warrant during the appeal process and that request was denied by the Dutch court. The Dutch Attorney General suggested, during the appeals process, that Valentino may not be extraditable if convicted *in absentia*. This all supports releasing Valentino on bond pending his detention hearing.

**Conclusion**

Valentino is 71 years old, has significant ties to the community, and continues to have an active legal practice. He was convicted *in absentia* for crimes that did not allow for pre-trial detention in the Requesting State, and so he could not be extradited before he was convicted. Valentino has a reasonable likelihood of prevailing on one or more issues

---

[10] Valentino was convicted of violating Article 140 of the Netherlands' Penal Code and Article 68 of the State Taxes Act. The court has reviewed an unofficial translation of the Netherlands' Penal Code (found at http://www.ejtn.eu/PageFiles/6533/2014%20seminars/Omsenie/WetboekvanStrafrecht_ENG_PV.pdf) and is unable to find a provision that allows for extra-territorial jurisdiction for acts in violation of Article 140 except, apparently, when the offence is committed against a Dutch seagoing vessel (Article 4, 8°) or is a terrorist offense, or the financing of a terrorist offense (Article 4, 14°). The court has also reviewed the Netherlands' State Taxes Act (https://download.belastingdienst.nl/itd/beleid/awr0503.pdf) and is not able to find a provision that allows the Netherlands to assert jurisdiction for tax advice rendered outside of its borders. Because copies of the statutes have not been provided, it is unknown if these are the specific provisions relied upon by the Dutch Government, or even if the translations available to the court are accurate. Article 9(2)(e) of the extradition treaty obligates the Requesting State to provide this information. At this time, although it has provided copies of the charged offenses, it has not provided a copy of the provisions that give it jurisdiction over Valentino for his conduct.

at the extradition hearing. He does not pose a flight risk or danger to the community. Accordingly, because there are special circumstances supporting his release, Valentino is ordered released on bond pending the extradition hearing in this case.

Separate orders setting the amount of bond and other conditions of release will be issued.

Signed at Houston, Texas on May 11, 2018.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge